Case number 22-3050 from Eastern Arkansas, Steven Pinder v. WellPath et al. Mr. Gooch. Good morning, Your Honors, and may it please the Court, Counsel. The question is, did the trial court commit reversible error in using a claim-by-claim approach to assessing Mr. Pinder's claim for an exemption after the trial court or during the period of time when the trial court was dismissing, on a claim-by-claim basis, almost all of Mr. Pinder's claims and almost all of the named defendants? The short answer to that question is yes. The longer answer is pretty straightforward, but let me just skip some things. The first is, Mr. Pinder's a three-striker, no dispute about it, even though the record's not 100 percent unambiguous. Well, that brings up an interesting point that I want to ask right off the bat, because I didn't hear you mention this, but why shouldn't we revoke IFP status right now, given that we have evidence showing that every single issue that he had was remedied? Well, first, you don't have evidence that every single issue was remedied. What you have is that Mr. Pinder suffers from chronic conditions which require not less than 90-day review over years. No evidence at all that those conditions have been cured, only that for certain, every 90 days something needs to be done. All right, let me rephrase. Well, let me answer your question. The Attorney General's Office and the WellPath and them say, well, we fixed this because every so often we renew his prescriptions. We don't do it when we should, but we do it sometimes. Well, that's why I was going to redirect you because you weren't answering my question, which is imminent danger. Even if you're right, he's not in imminent danger right now because there's no evidence to the contrary that he doesn't have his prescriptions and he doesn't have the other things he needs. And so that presents a problem because the statute itself says you have to be in imminent danger for a civil action or an appeal. It's in the disjunctive, which means you have to reprove the imminent danger on appeal. And I agree with the context of your question, Judge, but the problem is this Court has said several times that if you have a continuing pattern of failing to provide treatment, that can constitute imminent danger. That's your test. And Mr. Pender alleged that... In what case? Oh, I didn't think that was our case. I think it's... I don't know. I don't remember just off the top of my head which case it is. Well, have we set a standard? Some courts have said it's sort of a threshold inquiry. It's on the face of whatever document the litigant is presenting on appeal. This is sort of going back in time now after counsel's been appointed. How do we do this? Well, that's an additional layer of answer to Judge Strah's question about what do we know today or what did we know when the appeal was filed. Well, it's what we know today about when the appeal was filed, right? Yeah. And the answer to those questions are that I was unaware that this Court did evidentiary hearings. I understand the notion that you file a motion and you attach stuff to it, but not stuff like this where the gravamen of the claim was and is that they have a policy of not renewing prescriptions until they've been used up. Well, I agree with you that we don't do evidentiary hearing, which I think is the thrust, but I don't think we have to do one here. It's kind of like a summary judgment type thing. We have the State saying there's no imminent danger right now for the following six reasons, and then we have nothing on the other side saying, other than this continuing violation, which we have to decide whether that's enough, but nothing on the other side saying, actually, no, his orthopedic issues are not being addressed and his diabetes are not being addressed. I don't want to get into too much detail because this is health, but you know what I'm saying. I do, Judge. Mr. Pender filed an affidavit when he filed the appeal saying, continuing problems, they still haven't fixed anything. Now, I will admit that he appears not to have graduated from law school and doesn't do it in an artful way, but he persistently says that my prescriptions are not always but often late, and there's no evidence that those are harmless, only that whenever my friends are called on the carpet, they say, oh, well, we refilled them now, so you can't file now because we just realized we should have done this before. It's a conundrum to say to an inmate who doesn't have personal access to his medication, you can't get your medication until you run out of it, and you don't have it on the shelf in your cell, so you can only complain after you've run out. Now, how that cannot be a continuing risk of imminent danger is a mystery. Is there anything else, though? We have actually done this before. We found an ad panel case, I believe, where we had revoked IFP based on evidence produced by, I think, a prison. Is it just the continuing violation? Is that all you have? I just want to ask, is there any allegation today that he doesn't have his prescription right now or at the time of the appeal or doesn't have any of the other? I just want to know what the scope of your evidence is. Right, and the answer is I didn't bring an affidavit with me today. Fair enough. But at the time the appeal was filed, there was an affidavit by Mr. Pender that said, hey, because you will recall the clerk of this court said you're out, you're a three striker, you cannot appeal IFP. And this court then ultimately ruled that you granted IFP, remanded for the limited purpose of collecting the filing fee in an incremental way. So one assumes that I wasn't under a duty to bring an affidavit with me today, but rather to trust that your decision to allow him to proceed in formal purpose was an informed one based upon the record that you had in front of you at that time. Just to be clear, the question isn't today. Right, and I just want to be clear. But he says today. Yeah, well, I mentioned today. It's my fault. But just to be clear, it's just the continuing violation. That's all we have at the time of the filing of the appeal is I'm not getting my medicine on time and this is a continuing violation. I just want to know what it is that I want to pin this down as to what evidence was available at the time of filing. And I can only tell you that I brought all that stuff. I left it over there because I didn't anticipate we'd get into these particular weeds. But I appreciate the question. The problem is it doesn't seem to me to be much of an issue when you consider that he was allowed in the trial court based on a finding of imminent danger, at least to one of his claims, to proceed in formal purpose on that one claim. And that claim is before you. Is there some reason to think that that claim is now not subject to the same issue of imminent danger? And the answer is no. It's fair to infer if it's been pending. And by the way, Mr. Pender's allegations in his complaint and since have been that these medical problems have existed since at least 2013, unabated. Occasional intermittent treatment, yes. Whether he agrees with what he got or not is not enough because the law is that disagreeing with the doctor is not a constitutional violation. The problem here is that my friends don't provide him with consistent regular treatment. So yes, that is a central aspect of whether or not today he should be allowed to proceed in formal process. And just to note, the reason why I'm bringing this up is we have a motion that was taken with the case to revoke IFP status. So it's still a live issue before the case. And I'm just trying to figure out how to deal with it. Right, and I appreciate that except that it seems to me you ruled on the question of the appeal by saying you're allowed to proceed in formal process, start paying the filing fee. Which as far as I know, I can't represent that I have personal knowledge, but that I assume the Department of Corrections is subtracting money from his account to pay the filing fee. So he's paying the filing fee in this case incrementally. Now, I don't know if that's enough to get past the question of imminent danger because he's paying as opposed to being excused from paying. But ultimately, and I know that's not a satisfactory complete answer. I recognize that. On the other hand, I do want to point out that you look like you have a question, Judge. Oh, I have many questions. Well, let me make my pitch and you feel free anytime you want, Judge. The plain language of the exemption does not say anything about the government's current argument. Think of it this way. The language in the statute says, unless the prisoner is under imminent danger of serious physical injury. And my friends think it says, I actually wrote it down because it's kind of a remarkable notion. Their view of it is, unless the prisoner for each individual claim is under imminent danger of serious physical injury. Now, those words, each individual claim, are not in the statute. And Congress knows the difference because in the PLRA, they actually say claim by claim in 1915 capital A, subparagraph B. That's what they say, claim by claim. In 1915 E, I think it's 2, they say, which is ironic because it's the same basis for dismissing, but then they say the case can be dismissed as opposed to claim by claim. So that provision isn't clear whether it's claim by claim. And in 1915 G, they don't mention claim by claim. And the language of 1915 G is action, which is the lawsuit, not the individual claims. So to paraphrase what the United States Supreme Court said in a very different case, in the end, with all the fencing between the parties about the language Congress didn't use, perhaps you are respectfully best advised to focus on the language it did use. And that language does not include claim by claim analysis of whether you get to go in. And I'm now into my rebuttal, and I'm mindful that I'd like to save some, but I want to make sure that I answer your questions. That's more important than the rebuttal. But it does seem to me- Well, what in the record on the summary judgment, what demonstrates, even suggests, deliberate indifference? Well, it's a kind of a complicated notion, Judge. If you take a lawsuit- Actually, it's criminal recklessness, you know. Yeah, you can make it as complicated as you want, but we don't find it in more than 1% of the cases. I understand the hostility of an appellate court defining that, and for the obvious reason that you don't want to run state prisons. It was the hostility of the Supreme Court in defining what deliberate indifference means. I didn't mean only this court of appeals. There are no federal judges who want to run state prisons. Would you answer the question? You are using up all your rebuttal because you want to pontificate on all this. I just asked you, what evidence demonstrates deliberate indifference? In this case, denying Mr. Pender access to the discovery and to the answer and to the medical records meant that he could not make a complete showing with respect to the one issue that remains. As to that one issue- Did the district court find no due deliberate, no due diligence? What I'm suggesting is that if you have a pattern of not providing care instead of just doing- I'm not talking discovery. I'm saying what evidence of deliberate indifference in this treatment of the shoulder problem? I understand the question. Sorry if I didn't get here directly, but the answer is there's a policy that says you don't get some treatment until after you've run out of the other treatment. That creates an automatic lag. On top of that, as it pertains to the specific care, what you have is you have that situation having continued for a number of years. And I'm not talking about you get to sue for past harm. It's imminent future harm. That's the question today. And if the evidence, which is in there- I thought the shoulder issue was not about meds. It was about treatment. No. Well, now you're talking about the meds. You're back to what you wanted to talk about before. I'm trying to get to the summary judgment part of the case, which to me is the guts of it. Well, it seems to me that if they say, if my friends say, we're going to order a double cuff and then we're not going to order a double cuff, and they do nothing about repairing the damaged joint, and that's what the record shows. They did nothing other than- The record also shows some examinations that he probably didn't need it. Sure. If you have an evidentiary hearing where you allow that. The administrative record, the post-grievance record. Are you talking about the 150 pages they sent to this court, or are you talking about the record in the trial court? He grieved on June 15, but in the interview or some kind of hearing, he testified he can pop a shoulder in without assistance. No treatment sought until July. The nurse reported active range of motion of the upper extremities without difficulty in late July. He then missed appointments on late July and early August, and the hearing people were told he refused care. The government argues nothing here to demonstrate deliberate indifference. That is criminal recklessness of his problem. Well- And I'm just asking for- His sworn- I didn't see a response in a reply brief to that. No, and I appreciate that. His sworn statements in front of the trial court on this issue was that it's an ongoing persistent problem that is not being adequately treated. We have multiple cases that the complainant's testimony is not enough when the question is deliberate indifference. Yeah, I know. I understand that. I didn't create the record that you have. No, I know you didn't. I'm just asking. I'm making sure that what I see so far is what there is. I think that's a fair description of what you can see, and I can't tell you what you can't see because Mr. Pender really had no meaningful opportunity to develop the record. He was deposed, and then my friends offered evidence from the medical records, which they concede are not all of the medical records. At least you didn't get all of them. And on that basis, the magistrate judge said, well, it's not enough. He couldn't win in front of a jury, and therefore summary judgment's appropriate. I didn't make that record, and I can see where, looking at it in a reasoned way, there's enough here. But if you don't agree, you don't agree. I don't have any control over that. But even if the summary judgment portion were to be affirmed, you still have the problem with the court having eliminated the other 80% of his lawsuit on a claim-by-claim basis, which we submit is in violation of the language of 1915G, which doesn't answer the question. To your question, Judge, we don't know. I don't know. I can't help you with how you should legislate the procedures to be used. We understand your position. I'll be over here. Ms. Middleton? Good morning. May it please the court. My name is Rossin Middleton. I am Arkansas' senior assistant attorney general, and I represent separate appellee Rory Griffin. I will be presenting his position and will be taking six minutes of your time to discuss the issues the court finds pertinent, and will be followed by Mr. McElroy and Mr. Terry. Because Mr. Pender was not in imminent danger when he commenced this appeal, his informer's paupers' appeal status should be revoked and the appeal should be dismissed. As pointed out, imminent danger must exist at the time an appellant commences his or her appeal. And to invoke this exception, the imminent danger exception, a three-striker must put forth specific fact allegations of an ongoing serious physical injury, evidencing a likelihood of imminent serious physical injury. I'd like to ask a bit about that, because normally when these come to us, at least on the appeal, it's an incarcerated person who is filing a document presenting why they believe they're in imminent danger, and we rule yay or nay. This sort of adds a new layer to it, which is restarting the investigation on this, on a motion to revoke. And the parties have submitted a number of factual assertions about this issue, but I don't see a lot of procedural questions answered on how this is going to work. Is your argument regarding this motion to revoke, is it going to affect how we view that initial request to proceed informer paupers under this exception? In other words, is what you're presenting us today going to increase the burden for an incarcerated person out of the gate trying to get informer paupers? And then if we appoint counsel, they never know if it's going to be revoked. I'm just a little unsteady on the consequences of your request here, mostly as a procedural matter, but obviously that has substantive consequences. Okay, that was a lot. Let me start. I don't think it increases the burden on the prisoner. Mr. Pinder is a three-striker, so he was well aware of this fact. Speak up a little bit. I'm sorry. Mr. Pinder was a three-striker. He was well aware of the exception and that he, as a three-striker, he's required to pay the fee, so he submitted his declaration. I think it just kind of requires the court to look at the evidence that was submitted to the district court, and is he alleging now, and I guess you will have to look at the affidavit that the inmate submitted in support of his IFP application. So I don't really think it's a burden on the prisoner. I might put a little bit more work on the court on the initial end. Well, is it your position that what Mr. Pinder presented as an initial matter in his motion to proceed in form of PAPRS was insufficient? Yes. Okay, so that is putting an additional burden on the incarcerated person, isn't it? Because if you're saying that that initial statement is insufficient, just standing alone, he needed to have put up more at that point and anybody else in his position. Do you see the ñ as opposed to coming back and saying, oh, that's all wrong. Well, I see where you're going, but I think, and this is when we challenged, when we chose to challenge his IFP status, I think that burden shifts to us to prove that what he submitted was insufficient, and I think that's what we did here by presenting evidence that he had refused his chronic care visit, he hadn't submitted any requests at the time he filed his notice of appeal, and that he'd even been examined by an optometrist, I believe, back in June or July, regarding his glaucoma claim. Well, and just to follow up on Judge Kelly's exact line of questioning, it does place a greater burden. I'm just not sure the amount of burden that it places. I think what you're arguing, and I want to be clear about this, is he needs to say, I still don't have my double cuff script. I still don't have my diabetes medication. I don't want to get into too much because I don't want to sort of invade his privacy, but he needs to say whatever it is he's not getting in his affidavit. Is that sort of the area? Okay, so then what happens? So if you say he does have his double cuff script, he says, I don't have my double cuff script, and you put in a script showing that you do, how do we deal with that without holding like an evidentiary hearing? I mean, it's hard to weigh the evidence when you have two completely separate sides going at it. I think that's a matter for the discretion of the court, how you choose to handle that. I'm not willing to say how you should do your job, or you could possibly, I guess, shift the burden down to the district court to perhaps review his claim that he is in imminent danger right now when he filed that notice of appeal. But I think the answer may be we can't, to be honest with you. But I think your argument would be we don't have that here because we don't have anything from him saying these things. He says he's still in imminent danger, but that's a conclusion, and he hasn't listed the things that he specifically doesn't have, whereas you have evidence going the other way, so there's nothing really to resolve here. Right, and it's on his burden to present evidence, show specific facts that he is in fact in imminent danger, and that's what he didn't do. I think in his brief he relies on the court's 2015 finding of imminent danger and tries to bootstrap himself back into the court based on that previous case. But I think the circumstances that existed in 2015 and those that existed in September of 2022 are quite different. In 2015 there was evidence before the court that he presented evidence showing that he lost vision, field of vision in his right eye and his left eye, and he doesn't present any kind of proof of that to the court when he filed his notice of appeal. Here the medical evidence before the court shows that, as I said before, he got treated for his glaucoma in July of 2022. There was no request seeking any type of physical examination, and he even refused his chronic care visit back in August, which was a month before he filed his notice of appeal. So if you were in imminent danger, would you have refused such care, is my question. And I think for those particular reasons, I think the court should revoke his IFP statute. There's just no evidence here showing that when he filed his notice of appeal, he was in imminent danger. And it's not enough to just say, I was in imminent danger. You need to say why you were in imminent danger. And that's true when you start the civil action too, right? Correct. He's made those allegations at the start of the case. Judge Volpe told him to amend. He came back, said I'm in imminent danger. He allowed him to proceed. And as I don't think we've discussed, the court has the discretion at any time to go back and revisit this question. What about the capable of repetition yet evading review? I know that's a mootness doctrine, but his argument, his main argument, I think I pinned him down on this, is the continuing violation. Every time my medicine runs out, there's a delay of six to seven days under a policy. And it seems like if we do a strict application here, his claim is always going to evade review, at least from the standpoint of the IFP statute. Well, I think the court has explained previously when looking at the evidence and looking at other cases, he's saying that it's a continuing problem, but the evidence shows that the longest he's ever gone without a particular medication is 30 days. And this court is saying a 30-day delay in receiving medication doesn't give rise to a constitutional violation. I think the same should apply here. If we're going to say it doesn't amount to a constitutional violation, how does it meet the imminent danger? Well, if it's heart medicine or something like that, then you've got serious problems. He has a heart attack. But here we're not talking heart medication. We're talking glaucoma. Some of it is just the refresh is just a basic contact lens rewetting solution. So I think it's a case-by-case basis depending on the circumstances of how we determine imminent danger. Opposing counsel says the Ninth Circuit has a presumption in the case called Parmo that I haven't read. Is that accurate? That is correct. The presumption of continuing imminent danger. The Ninth Circuit says so in Williams v. Parmo that there is a presumption. When the district court finds it, he automatically gets the presumption. But I don't think that applies here. It wasn't applied to this appellate question? No, not here. No, sir. But it was applied in Parmo. And Mr. Pender's counsel is arguing he's entitled to a presumption. But my position is that he's not entitled to that presumption here, especially with respect to Mr. Griffin, because the district court found no imminent danger with respect to the claim against Mr. Griffin. So I don't think he's entitled to the presumption with respect to Mr. Griffin or to any of the appellees, as a matter of fact. The only claim there was finding an imminent danger was the double cuff script. And once we got to the summary judgment stage, the court found that this was just a disagreement over treatment. He said he needed a prescription. All the evidence said he did not, as the court just previously discussed with counsel. That strikes me as a problem with the claim-to-claim approach. Well, I think the claim- Nobody really accurately summarizes the Sharon opinion. Because we reviewed the entire claims, but it was only the entire claims against one defendant. Correct. And that was because the district court simply found imminent danger as to that defendant without going claim by claim. So we reviewed them all, and we sent it back but pointed out that exhaustion was an open issue. Exhaustion will kill most of these cases. And what we did, there were multiple defendants in Sharon. And that's where we ducked the claim-by-claim approach. And I would certainly want to continue that. We don't have that here. We have one plaintiff. In Sharon, yes, sir. And we have multiple- Well, I just don't- If there was imminent danger at any time, why shouldn't the court just grant IFP status and move on with the case in the district court? Well, then you would be circumventing the language that says that you can revisit. Your Honor, I'm into my co-counsel's time. If you'd like for me to go ahead and answer the question, or I can hand it off to one of the answers. I think you should answer the question. Okay. I think it depends on the circumstances for each case. Heart medication, yes. And because we liberally construe an inmate's complaint, some judges give them the benefit of the doubt. Because I would argue that even his claim about the double-cuff script was not imminent danger. But he said he wasn't getting, he didn't have the script at the time he filed, so thus the court said, I'm going to give you grace here and let you go forward with this, Colleen. So- It's, yeah, it's- Well, the three strikes law makes for a lot of problems. Yes, Your Honor. Thank you. Go ahead. May it please the court. My name is Jacob McElroy and I represent Apelli Diamond Drugs. Who? Diamond Drugs Incorporated. Diamond Pharmacy. Yes, sir. And, Your Honor, we agree with Co-Apelli that the claim-by-claim approach currently precedent in this circuit is appropriate and should remain. You're representing WellPath? No, sir, Your Honor. I represent Diamond Pharmacy. It's another Apelli in this matter. We provide the medication to the jail. Essentially, basically, as we believe the claim-by-claim approach should remain, we do not believe that the district court committed any reversible error as it relates to its application of the claim-by-claim approach. Does that make sense, the claim-by-claim approach? I hate to jump in, but here's my issue with it, which is what you're trying to achieve. You're trying to achieve IFP status, right? You're not trying to pass the summary judgment standard at that point and prove that the claim has any merit. You're merely saying, does he get into court on his case, on his civil action? That's the language of the statute. Does it make any sense to say you have IFP for one claim, but you don't have IFP for three claims? Or does it make more sense to just say, hey, the entire action comes up because that's – in other words, we don't just say – let me just give you an example. In any other context, we don't say, yeah, we like claim A, so we're going to give you IFP status. But we think claim B, C, and D is kind of bogus, so we're going to deny it. This is the only context in which there's any argument that you can do that. I understand, Your Honor. I think the way that I look at it is I look at what the policy – or what the rationale behind enacting the policy in the first place, which is to try and streamline the court's process. But even more than that – Look how it's streamlined it. Well, but I believe it's also – Seriously. I understand. But I believe the other rationale behind it is simply to get rid of the bad and let the good move forward. And I think that's exactly why the claim-by-claim approach actually works, especially in a situation like this where if you allow a plaintiff to bring – A district court has so many case management tools to do that. I understand, Your Honor, but I believe this is another tool that they can use and should be able to use. And yet under the statute, we've sort of – like, exhaustions come up. Sort of you have to – that's a claim-by-claim concept that we understand. But in 1915G, we're talking about the status of the person, right? Unless the prisoner is under imminent danger of physical injury. So it's even that phrase is attached to the litigant, him or herself, not to claims. Can you help me understand how to make your bridge back to claims? I think ultimately that if you don't take it in its entirety, I think – or I'm sorry. If you take it in its entirety, how can you be – or why would you be allowed to bring an entirety of claims against a multitude of defendants if you are only under imminent danger as it relates to one specific thing? And in this case, one specific thing that was shown he was not. Well, I think multiple defendants is different. I agree. Or you think it's – Well, I should – although plaintiffs would be different. Right. I think if you allow them to bring it against multiple defendants and they literally only have one claim that reaches the threshold, then at that point you've basically opened the door and it kind of circumvents the whole rationale behind the PLRA. I understand the logic of what you're saying and sort of you're saying the rationale of this particular provision, but I keep bumping up against the language that says unless it's the prisoner is under imminent. No. And so I just – but basically your argument is mostly the rationale behind the provision. A hundred percent. I can't argue what the specific language states, but I do believe that the purpose behind it was to limit and therefore in this particular case he should have been limited. But it's not about – if I could ask one quick – it's not about the merits of the claim. I think that's – I think you'd even agree it's about the imminent danger claim by claim. And so it's not even as if we're saying, okay, these three claims in my earlier example can't go forward because they're meritless. There may be merit. He may actually have a constitutional violation, but I think what we're saying is but he's not in imminent danger even if there was a constitutional violation. Correct. And if he does actually have a claim at that point, I do believe he should bring – he should be allowed to bring forward his claim. He should just not be allowed to bring forward his claim for free. He should have to pay the filing fee and file it as a separate claim. And I'm sorry. I'm at the court's disposal, Your Honor. I represent the other party. I know our time has expired. Which party? WellPath. May I have one minute? Yes. May it please the court. My name is Rex Terry, Your Honor. I'm from Fort Smith. I represent WellPath whose two employees, Dr. Gary Kirstein and Tracy Bennett, a nurse, were granted summary judgment on the one issue that was remaining that was allowed to proceed IFP. We believe the record fully establishes this was the correct decision. The magistrate made extensive – Summary judgment. Yes, sir. Made extensive findings in Document 162 in the lower court which were fully approved by Judge Miller and judgment was granted in favor of those two defendants. Should the court determine this case should be remanded, we would urge the court to affirm on the summary judgment simply because it met and exceeded the standards of Rule 56. Our clients were entitled to summary judgment. They presented evidence, including the review of a medical expert. And in the face of that, there was no evidence presented, only arguments presented to the contrary by the plaintiff. So that's what I have to say on that issue. We would urge affirmance of the case in its entirety, but at least with respect to the summary judgment. I apologize for taking the court's time. Thank you. Thank you. I'll give you a minute, Mr. Gooch. Thank you. In rebuttal, I can only say that I just heard my friend say that loss of vision is not a serious physical injury. You know, it's just startling the unkindness built into this application of this exemption in a way that says inmates who may or may not be wealthy are stuck if they don't have enough money to pay the filing fee. Because that's all we're talking about is incrementally paying the filing fee. The other thing is I agree with the comment about our needing to talk about Chiron because my reading of Chiron is that it does not support, at least as it would apply to Pender, claim by claim. And without that language, there is no Eighth Circuit authority that forces you to live with claim by claim. I agree with that. If only I could be standing here and Mr. Pender could be heard in this court. But their motion may prevent you from hearing that. One thing that confused me in the briefs was the back and forth about the Supreme Court's exhaustion opinions, Bach and so forth. Give me in 30 seconds what they have to do with this. It is this simple in my view. Exhaustion is covered by a different provision in the PLRA. But what the Supreme Court said there to the Sixth Circuit was don't insert language that doesn't exist because the Sixth Circuit had attempted to, you follow where this goes. And that seems to me to be exactly what is going on here. I read the cases. The point of those cases to me is even if you get IFP status, you still got to ring the exhaustion bill. Well, PLRA has a labyrinth of obstructions. Thank you. Thank you, Counsel. The case has been thoroughly briefed and argued helpfully. It does help. Thank you. And we'll take them under advisement.